United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY AREA RAPID TRANSIT,<br><br>Plaintiff,<br><br>v.<br><br>GE TRANSPORTATION SYSTEMS GLOBAL SIGNALING LLC,<br><br>Defendant. | No. C 06-03749 JSW<br><br>**ORDER DENYING BART'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING GETS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Now before the Court is the motion for partial summary judgment filed by Plaintiff San Francisco Bay Area Rapid Transit District ("BART"). BART moves for partial summary judgment on the ground that Defendant GE Transportation Systems Global Signaling LLC ("GETS") failed to comply with contractual claims procedures and is therefore barred from recovery for certain damages. Also before the Court is the motion for partial summary judgment filed by GETS, moving to limit BART's damages to the exclusive remedy provided in the contract.

Having considered the parties' pleadings, relevant legal authority, for the reasons set forth in the remainder of this Order, the Court DENIES BART's motion for partial summary judgment and GRANTS GETS's motion for partial summary judgment.

**BACKGROUND**

According to the complaint, BART owns and operates a high-speed automatic electric rail rapid transit system in the San Francisco Bay Area. During the 1990s, BART began to

1  explore options to increase the capacity of its transit system to accommodate projected
2  population growth and corresponding increased traffic demand.  BART sought to develop
3  technology that would allow the trains to be operated on existing tracks with shorter time
4  intervals and decreased distances between trains, as well as at greater average speeds than was
5  earlier possible.

6  In pursuit of these capabilities, the Hughes Aircraft Company ("Hughes") proposed a
7  train control system based on a radio frequency communications network technology that
8  Hughes had previously developed for the United States military.  The new system would
9  measure radio frequency propagation times between transmitters and receivers installed on the
10 trains and along the tracks, and using these times, compute the distances between wayside
11 installations and mobile trains.

12 In 1993, BART sought bids on the development and installation of an Advanced
13 Automatic Train Control ("AATC") system employing this basic technology.  The project was
14 projected to require three phases:  (Phase 1) a prototype research and development program at a
15 test track; (Phase 2) the continuation of research and development work, testing and
16 certification of a demonstration of the AATC system; and (Phase 3) implementation of the
17 AATC system on portions of BART's system.  After Phase 1 was substantially completed in
18 April 1996, Harmon Industries, Inc. ("Harmon") participated in the development of the
19 signaling technology and worked to track the location of all AATC-equipped BART revenue
20 vehicles and to communicate vital control data from station controllers to those vehicles.
21 Harmon formally executed a contract with BART on February 26, 1998 (the "Agreement"), in
22 which BART procured Harmon's performance on Phase 2 and BART received an option to
23 purchase the performance of the Phase 3 work if BART chose to proceed.

24 In August 2000, General Electric Company acquired all of Harmon's corporate stock
25 and transferred the business to GE-Harris Railway Electronics, LLC, which was eventually
26 renamed to GETS.

27 The contract at issue between the parties is a hybrid performance and specification
28 (design) agreement, memorialized in a document nearly 700 pages long.  BART purchased from

2

GETS the design, development, testing, manufacturing, warranty, documentation and certification for revenue operations of an AATC system, associated systems and related equipment for ten control cars, to passenger stations, and associated track segments.

During the initial five years of the Agreement, the Phase 2 work progressed in the manner dictated by its terms. However, after that time, the parties began to encounter various difficulties in the performance of the Agreement, involving much correspondence and negotiation between the parties, and finally culminating in the filing of this matter. BART alleges six causes of action: rescision of the contract, rescision of two of the contract's change orders, breach of contract, termination – contract reimbursement, partial specific performance/injunctive relief, and declaratory relief

The Court will address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.   Legal Standard on Motion for Summary Judgment.**

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     BART's Motion for Partial Summary Judgment.**

BART contends that GETS failed to comply with the claims procedure outlined in the parties' Agreement with respect to two sets of damages, specifically, "Costs Invested by GETS to Develop the AATC Asset" and "Reasonable Return on GETS' Investment." (BART Motion at 2.)

Article P9.6 of the General Conditions of the Agreement provides:

> **P9.6 Potential Claim.** The Supplier shall not be entitled to any additional compensation or damages otherwise payable or to any extension of time for completion as a result of any act by the Engineer or the District, the happening or any event or occurrence, or any other cause, unless the Supplier shall have given the Engineer a written Notice of Potential Claim therefor as hereinafter specified and shall have complied with the other requirements specified in this Article P9.6; provided, however, that a Notice of Potential Claim will not be required for protests made in accordance with the change procedures of Article P4.4 until the completion of the procedures set forth in such Article.

(Declaration of James A. Bruen ("Bruen Decl."), Ex. A at 1-0056.) Article P9.6.1(a) requires that GETS submit an initial notice of intent to file a potential claim no later than 48 hours following the event which precipitates the claim. (*Id.*) Article P9.6.1(b) requires GETS to submit a written notice of potential claim no later than 20 working days following the precipitating event and the subsequent portions of the same Article specify the particulars and require strict compliance with the Agreement's claims provisions. (*Id.*, Ex. A at 1-0056-58.)

4

BART claims that GETS failed to comply with the strict requirements of the claims process, and is therefore barred from making certain claims for damages. There is no factual dispute that GETS did not in fact comply with the claims procedures outlined in the Agreement. However, the Court finds that the principles and law supporting the enforcement of claims notice rules does not apply when the government agency sues in the first instance. The core purpose of the claims procedure is to "give the governmental entity an opportunity to settle just claims before suit is brought[, and to] permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim." *Arntz Builders v. City of Berkeley*, 166 Cal. App. 4th 276, 289 (2008) (citations omitted). "A contractual claims procedure will amply serve those purposes because the public entity can include in the contract any reasonable requirements it deems necessary to accomplish them." *Id.* Both the statutory and the contractual purpose of requiring strict compliance with a claims procedure is for the governmental entity to secure adequate notice and an opportunity to defend itself or implement remedial measurements to address the issue.

In *People ex rel. Dept. of Parks and Recreation v. West-A-Rama, Inc.*, when a concessionaire cross-complained on the same agreement as the state park seeking a declaration of the rights of the parties under the agreement and for money damages, the court found that such a counterclaim did not require strict compliance with claims procedures. 35 Cal. App. 3d 786, 794 (1973). The court found that although "the filing of a claim is normally a prerequisite to the maintenance of an action for damages against a public entity, ... when the state has filed suit on a contract, the defendant should be permitted to cross-complain for damage on the same contract without complying with the claim statutes." *Id*. The Court similarly finds here that the purpose of the claims procedures, both statutory and contractual, have been satisfied, and adopts both the reasoning and the holding of the *West-A-Rama* case. The Court finds that GETS may cross-complain on the same contract without following the strict contractual claims procedures

1  in the Agreement, as the purpose to secure adequate notice and the opportunity to prepare a
2  defense or maintain remedial efforts has been satisfied.[1]

3        Accordingly, the Court DENIES BART's motion for partial summary judgment and
4  finds that GETS's failure to comply strictly with contractual claims procedures does not bar
5  GETS from seeking to recover the claimed damages on its counterclaim.

6  **C.    GETS's Motion for Partial Summary Judgment.**

7      **1.    Exclusive Remedy Contractual Provision.**

8        GETS contends that the AATC project was acknowledged by both parties to be
9  inherently risky and therefore, the parties agreed to an allocation of risks in the specific contract
10 language. In the Third Amended Complaint, BART concedes that

> The Contract also addresses the risks inherent in all research and development projects that seek to expand existing technical knowledge, such as that the objective might not turn out to be technically achievable, that the cost of completing the Phase 2 work might be greater than expected or commercially acceptable, or that the market value of the technology if and when perfected might be less than originally hoped because of the interim development of competing technologies or other changes in the marketplace.

15 (Third Amended Complaint ("TAC") at ¶ 28(3).) When BART first launched the AATC
16 project, its own management viewed the project as "pie in the sky" and "highly risky." (Bruen
17 Decl., Ex. E (Nishinaga Depo.) at 61:18-62:17.) As a result of this perception, shared by both
18 parties, the contract negotiated between them contains no guarantees of success and allows
19 either party to terminate the technical development effort at any time with or without cause.
20 (TAC at ¶ 28(3).) The contract also explicitly provides for limited remedies in the event of a
21 termination of the pilot program, thereby allocating the assumption of risk.

---

[1] Furthermore, although the analysis is not required, the Court finds that the parties' efforts to reconcile their differences and the more than two years of correspondence and detailed negotiations gives rise to a presumption that BART voluntarily waived the strict contractual claims procedures by engaging in discussions about remedial efforts and damages based on the same assertions made in GETS's counterclaim. By fostering an atmosphere of informality and failing to complain about the process engaged in by both parties to resolve their differences, BART cannot now assert failure by GETS strictly to comply with the contractual procedures bars recovery. *See e.g., Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1339 (2003) (holding that specific performance on contractual provisions may be waived by informal conduct of the parties); *see also Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 983 (1997) (addressing waiver of rights).

Within the general conditions section of the contract, Section P8.3, entitled "Termination for Supplier's Default," provides that if the GETS defaults, BART may terminate the contract. (Bruen Decl., Ex. A at 1-0053.) Section P8.3.1 defines the term default to include "violation of the terms of the Contract, failure to make delivery of the equipment, material or supplies," or failure "to perform the services or other required acts within the time specified by the Contract or any extension thereof." (*Id.*) BART's remedy in case of termination for default is limited to its actual expenditures to complete the AATC project according to the specifications and terms of the contract:

> Upon the District's termination of the Contract or a portion of it, the District shall have the right to complete the Work or the portion terminated by whatever means and methods it deems expedient, including the hiring of others on such terms as the District deems advisable. The expense of completing such Work thereof shall be charged to the Supplier.

(*Id.*)

Following, Section P8.4, entitled "Termination for Convenience of the District," provides that the performance of the work under the contract may be terminated in whole or in part if BART determines that such termination is in its best interest. (*Id.*) Finally, Section P8.5, entitled "Termination for Causes Beyond the Control of the Supplier," provides that the performance of the work under the contract may be terminated by the District, in it sole discretion, if the Supplier maintains that completion of the work is impossible due to "unforeseen causes beyond the control and without fault or negligence of the Supplier, including any force majeure event." (*Id.*)

The remedies provided in the contract are explicit and exclusive. The parties drafted special supplementary conditions to which they specifically gave preference over the form provisions of the contract form language. (*Id.* at 1-0075.) The special conditions provide that either party "may terminate the Phase 2 work for any reason, with or without cause, upon sixty (60) days written notice to the other party." (*Id.* at 1-0090.) The special conditions further provide that the "sole and exclusive rights of each party in the event of termination of the Phase 2 Work are set forth above." (*Id.* at 1-0091.) As BART sues here for breach of the contract on the theory that GETS defaulted, the limitation of damages clause remains in effect. BART is

7

therefore limited to recover its actual expenses incurred as a result of completing the AATC project according to the terms and conditions of the contract as provided in Section P8.3.2.

Under California law, an exclusive remedy provision will be upheld unless it is unconscionable. *See, e.g., Bunch v. Artec International Corp.*, 559 F. Supp. 961, 968 (S.D.N.Y. 1983) (holding that California courts will enforce commercial limitations on liability unless it is established that the limitation is unconscionable); *see also Fosson v. Palace (Waterland) Ltd.*, 78 F.3d 1448, 1455 (9th Cir. 1996) ("a clear and unambiguous contractual provision providing for an exclusive remedy for breach will be enforced.") (citations omitted). The Court finds that the exclusive remedy provision in the parties' Agreement is clear and unambiguous and not unconscionable in light of the conceded experimental nature of the development project. The allocation of risk should the project be terminated for cause was that BART could only charge GETS with the expenses it incurred to complete the work according to the contract's specifications. (Bruen Decl., Ex. A at P8.3.2, p. 1-0053; SC8.3-P8.4.1.3, p. 1-0091.) Parties to a contract, especially for an inherently risky project, may ascertain and allocate the assumption of the risk in the provisions of their contract. *See Delta Air Lines, Inc. v. Douglas Aircraft Co.*, 238 Cal. App. 2d 95, 104–05 (1965) (holding that two equal bargaining parties may allocate risks, price and potential compensation in the terms of their contract.); *see also Markborough California, Inc. v. Superior Court*, 227 Cal. App. 3d 705, 714-15 (1991) (quotations omitted) ("it has been recognized that limitation of liability provisions are particularly important where the beneficiary of the clause is involved in a 'high-risk, low-compensation service.'" )[2]

---

[2] The Court is not persuaded by BART's contention that the contract's supplemental conditions do not impose an exclusive remedy because the provision does not apply to all sections of the contract addressing termination. The supplemental conditions provide that the remedy is exclusive in the event of termination of Phase 2 Work "as set forth above." (Bruen Decl., Ex. A at 1-0091.) There is no question that the Phase 2 work was terminated and the exclusive remedy of costs for completion is the explicit remedial provision set forth in the contract provisions preceding the supplemental conditions. If the word "above" were construed to apply to all types of termination including to Section P8.5 regarding termination in the event of a force majeure, the remedy provided in that section (BART to pay GETS for services already rendered as well as materials and supplies) may be construed as the exclusive remedy under that provision without contradicting a principle of contractual interpretation.

8

1  In fact, it is clear from the record before this Court that BART, at least in the first
2  instance, intended to complete the work and to get compensation for the cost to complete the
3  project. (*See* Bruen Decl., Ex. T; Ex. F (Lehrer Depo.) at 494:11-19; 507:15-510:7.) However,
4  it is undisputed that BART has not yet engaged in the process of completing the AATC project
5  once GETS stopped performing under the contract and BART initiated this suit. It is therefore
6  undisputed that BART has not incurred any costs that would be recoverable under the exclusive
7  remedy for completing the AATC system.[3]

### 2. Failure of Essential Purpose.

BART argues that even if the exclusive remedy provision applies, GETS is barred from asserting it under the doctrine of failure of essential purpose. BART contends that, although a services contract, the Court may be informed by the principles of the U.C.C. *See Pollard v. Saxe & Yolles*, 12 Cal. 3d 374, 380 (1974); *O'Neill v. United States*, 50 F.3d 677, 684 (9th Cir. 1995). BART contends that the principle found in U.C.C. § 2719 is applicable here, permitting a plaintiff to "pursue all of the remedies available for breach of contract if its exclusive or limited remedy fails of its essential purpose." *RRX Industries v. Lab-Con*, 772 F.2d 543, 547 (9th Cir. 1985). A limited remedy fails of its essential purpose where "'the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all.'" *National Rural Telecommunications Cooperative v. DirecTV, Inc.*, 319 F. Supp. 2d 1040, 1055 (C.D. Cal. 2003) (quoting *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F. Supp. 1495, 1510 (E.D.N.Y. 1984), *rev'd in part on other grounds*, 786 F.2d 72 (2d Cir. 1986)).

While it is true that whether an exclusive remedy has failed of its essential purpose is a question of fact and there are numerous disputed issues in the record concerning whether,

---

[3] Regardless of admissibility, BART does offer the price GETS estimated it would cost to complete the project in February 2008 at $65 million (John W. Crowley Declaration at ¶ 20) and the alleged and undisclosed expert opinion of its engineer, Jean-Luc Dupont, who estimates cost of completion would amount to $85 million (Jean-Luc Dupont Declaration at ¶ 9). However, the exclusive remedy in the contract provides that BART may recoup from GETS the costs it has actually expended in completing the AATC project. There is no dispute that, since the time it alleges GETS defaulted on the contract, BART has not continued to incur any costs in furtherance of completing the AATC project.

9

considering GETS' conduct, BART could have engaged in the process of finishing the AATC project, the Court does not find that it can readily apply the specific U.C.C. provision to the parties' current dispute. There simply is no parallel provision in common law as applied to services contracts and although "'courts are free to reason by analogy' to [the UCC]," the only other court addressing this particular issue has held that the U.C.C. cases do not apply directly to the limitation of liabilities clause of a services contract. *See National Rural*, 319 F. Supp. 2d at 1055 n.17; *Civic Center Drive Apartments Ltd. v. Southwestern Bell Video Servs.*, 295 F. Supp. 2d 1091, 1106 n.10 (N.D. Cal. 2003). Without sufficient authority to do so, the Court declines to extend the specific U.C.C. provision regarding failure of essential purpose to the parties' Agreement here.

Accordingly, the Court GRANTS GETS's motion for partial summary judgment limiting its liability to the explicit damages limitations provisions of its negotiated contract.

## CONCLUSION

For the foregoing reasons, the Court DENIES BART's motion for partial summary judgment and GRANTS GETS's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: May 27, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE